**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Jane Doe, individually and on behalf of
all others similarly situated,

     Plaintiff,

          v.

The Bank of New York Mellon Corporation,

     Defendant.

Case No. 1:25-cv-08525-JSR

**THE BANK OF NEW YORK MELLON CORPORATION'S**
**REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

ARGUMENT ...................................................................................................................1

I.    The Complaint Does Not Plead A TVPA Claim ...................................................1

      A.    The Complaint Does Not State A Participation Claim (Count I) ...........................1

      B.    The Complaint Fails To State An Obstruction Claim (Count IV) .........................7

      C.    Plaintiff Effectively Abandons Counts II and III....................................................8

II.   The Complaint Does Not Plead Negligence .......................................................8

CONCLUSION................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

## CASES

*City of Almaty v. Sater*,
   503 F. Supp. 3d 51 (S.D.N.Y. 2020).................................................................9

*Curry Management Corporation v. JPMorgan Chase Bank, N.A.*,
   643 F. Supp. 3d 421 (S.D.N.Y. 2022).................................................................8

*Doe 1 v. Apple Inc.*,
   96 F.4th 403 (D.C. Cir. 2024).................................................................1

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
   671 F. Supp. 3d 387 (S.D.N.Y. 2023).................................................2, 5, 6, 9, 10

*Doe v. Grindr Inc.*,
   128 F.4th 1148 (9th Cir. 2025) .................................................................2

*Dowdell v. Greene County*,
   788 N.Y.S.2d 439 (App. Div. 2005).................................................................8

*E.S. v. Best Western International, Inc.*,
   510 F. Supp. 3d 420 (N.D. Tex. 2021) .................................................................4

*Elmaliach v. Bank of China Limited*,
   971 N.Y.S.2d 504 (App. Div. 2013).................................................................10

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014).................................................................8

*G.G. v. Salesforce.com, Inc.*,
   76 F.4th 544 (7th Cir. 2023) .................................................................2, 3

*Harbinger Capital Partners II, LP v. Apollo Global Management, LLC*,
   230 N.Y.S.3d 68 (App. Div. 2025).................................................................8, 9

*In re Australia & New Zealand Banking Group Limited Securities Litigation*,
   712 F. Supp. 2d 255 (S.D.N.Y. 2010).................................................................4

*In re Terrorists Attacks on September 11, 2001*,
   740 F. Supp. 2d 494 (S.D.N.Y. 2010).................................................................10

*In re Watson Laboratories, Inc.*,
   101 F.4th 223 (2d Cir. 2024) .................................................................6

*Koenigsberg v. Board of Trustees of Columbia University,*
    2025 WL 1540252 (2d Cir. May 30, 2025) (summary order) ............................................9

*Levin v. Sarah Lawrence College,*
    747 F. Supp. 3d 645 (S.D.N.Y. 2024)..................................................................................7

*Mueller v. Deutsche Bank Aktiengesellschaft,*
    777 F. Supp. 3d 329 (S.D.N.Y. 2025)...........................................................................1, 3

*Putter v. North Shore University Hospital,*
    858 N.E.2d 1140 (N.Y. 2006)..............................................................................................9

*Villalobos v. Telemundo Network Group LLC,*
    2025 WL 2687948 (S.D.N.Y. Sept. 19, 2025)....................................................................5

## STATUTES, RULES, AND REGULATIONS

18 U.S.C. § 1595.................................................................................................................7

N.Y. C.P.L.R. § 214...........................................................................................................8

## OTHER AUTHORITIES

Business Transactions Solutions § 157:121 (Westlaw updated Nov. 2025) ...................................2

Plaintiff's opposition cannot deny the undeniable:  The 216-paragraph complaint in this case includes a grand total of *four* paragraphs containing factual allegations specific to BNY. Indeed, Plaintiffs' opposition only highlights the utter lack of substance in the complaint, citing over a dozen additional sources that the complaint does not ever reference.  Even if they were appropriate for the Court to consider (they are not), they do not cure the fatal defects in Plaintiff's suit.  Across both the complaint and the opposition, Plaintiff has never alleged (and could never allege) that Jeffrey Epstein was ever a BNY customer, and has identified only two disparate services that BNY ever provided *to other customers* that are alleged to have any connection to Epstein at all: (1) a 2005 line of credit to a business operated by an alleged Epstein associate, and (2) the processing of transactions as a clearing or correspondent bank.  These routine, nontailored services are nowhere near sufficient to state a plausible TVPA or negligence claim.

## ARGUMENT

### I.    THE COMPLAINT DOES NOT PLEAD A TVPA CLAIM

#### A.    The Complaint Does Not State A Participation Claim (Count I)

Plaintiff's TVPA participation claim fails for three independent reasons:  The complaint does not adequately plead that BNY (1) participated in a commercial sex-trafficking venture; (2) knew or recklessly disregarded that force, fraud, or coercion would be used in that particular sex-trafficking venture; or (3) benefitted as a result of its participation in the venture.

***Participation.***  As BNY explained (MTD 6-11), courts in the Second Circuit and beyond consistently hold that the participation element is not satisfied by allegations of passive facilitation or the provision of routine, nonspecialized services.  *See, e.g.*, *Doe 1 v. Apple Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024); *Mueller v. Deutsche Bank Aktiengesellschaft*, 777 F. Supp. 3d 329, 338 (S.D.N.Y. 2025); MTD 8.  Plaintiff rightly does not dispute that.  Instead, Plaintiff insists that the

complaint alleges "more than 'passive facilitation,'" relying on four discrete allegations.  Opp. 9.

Whether taken individually or collectively, these allegations do not plausibly plead participation.

*First*, the complaint does not plausibly allege that BNY provided "tailored services to

MC2."  Opp. 11.  In both the complaint and the opposition, Plaintiff identifies only one thing that

BNY offered to MC2: a line of credit (Compl. ¶ 67), a textbook example of a routine financial

service.  *See* Business Transactions Solutions § 157:121, notes (Westlaw updated Nov. 2025) ("a

line of credit" is one of "[t]he most typical arrangements" for "[t]he structure of a small business

loan").  Moreover, according to Plaintiff's own opposition,[1] the line of credit was offered between

2003 and 2006—years before Plaintiff even met Epstein (Compl. ¶ 46)—and the amount of the

line of credit was just $1 million, an entirely unremarkable figure for a business loan.   The

complaint also does not allege that the line of credit was "targeted … to the needs of [MC2's]

business," that BNY "repeatedly assessed [MC2's] 'operational needs,'" or that BNY "provided

'active, ongoing support' that was 'tailored' to those needs."  *G.G. v. Salesforce.com, Inc.*, 76 F.4th

544, 562 (7th Cir. 2023); *see also Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d

387, 405-406 (S.D.N.Y. 2023) (allegation that banks "assisted with 'structuring' cash withdrawals

so that those withdrawals would not appear suspicious" sufficient to plead participation).  Plaintiff

posits that the provision of this routine line of credit became "tailored" when "coupled" with

BNY's "disregard of serious red flags" (Opp. 11), but that improperly conflates the participation

and knowledge elements:   "[T]urning a blind eye to trafficking that may occur … does not

constitute active participation."  *Doe v. Grindr Inc.*, 128 F.4th 1148, 1155 (9th Cir. 2025).  And in

any event, the complaint does not allege that the line of credit (issued before Epstein's initial arrest

---

[1] Sworn Statement of Maritza Vasquez at 10-11, *Doe v. Epstein*, No. 08-cv-80893 (S.D. Fla. Jun. 15, 2010), https://tinyurl.com/3vcdt4t3 (cited at Opp. 7 n.10).

in 2006, *infra* pp.5-6) gave rise to any red flags. Rather, as alleged, the line of credit was precisely the sort of "common product[] or service[]" whose provision does not amount to participation. *G.G.*, 76 F.4th at 562.

*Second*, the complaint does not plausibly allege that BNY provided nonroutine services by "processing transactions" supposedly connected to Epstein. Opp. 10. BNY processes myriad transactions for institutional customers every day as a clearing or correspondent bank. *See* MTD 8-9. And the complaint lacks any factual allegations that the processing of these particular transactions was "tailored … in any way" to Epstein or his associates, or differed in any way from the other daily transactions processed by BNY. *Mueller*, 777 F. Supp. 3d at 338. Plaintiff's opposition contends that the "sheer volume" of these payments makes them non-routine (Opp. 4), but itself describes Epstein as having "virtually unlimited wealth" (*id.* at 6). Given that, the $378 million alleged figure (over an unspecified period of time) does not transform the underlying nature of the financial services from routine to non-routine. That is especially true given that BNY, as the world's largest custodian bank, processes trillions of dollars of payments every day. Indeed, in *Mueller*, a bank allegedly processed payments of "tens of millions of dollars" to ISIS-connected accountholders, and the court concluded those were routine services, given the bank did not "interact[]" with these accountholders "any more or differently than [it] would with [its] many other customers." 777 F. Supp. 3d at 333, 338. So too here.

Plaintiff's repeated incendiary assertion that all $378 million of these alleged transactions were "payments *to women trafficked by Epstein*" (Opp. 1-2, 9, 22) should be disregarded. This implausible claim is not supported by a single supporting factual allegation. In fact, Plaintiff acknowledges (*id.* at 1) that the $378 million number comes from "public statements" by members of Congress concerning the alleged transactions, statements that conspicuously do *not* assert that

3

*any* of the payments (much less all of them) were payments to trafficking victims; to the contrary, one of Plaintiff's cited statements claims that the transactions included "payments *to* … Epstein's accounts."[2]  Moreover, to the extent any relevant SARs exist, Plaintiff's counsel have made clear to the Court that they have not yet seen them, so they could not know whether any BNY-filed SARs exist concerning "payments to women."  Against this backdrop, counsel's baseless assertion raises serious questions about whether they have complied with their obligation to ensure that their pleading is "well grounded in fact."  *In re Aus. & N.Z. Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 263-264 (S.D.N.Y. 2010).  In all events, this unfounded assertion does not rescue the complaint's legally insufficient allegations about the routine processing of transactions.

The *third* and *fourth* allegations cited by Plaintiff are BNY's supposed "fail[ures] to carry out the required due diligence" by timely filing SARs and "to cooperate with law enforcement and other investigations."  Opp. 9.  These conclusory assertions are unsupported by any facts specific to BNY.  MTD 10.  Although Plaintiffs' opposition (but, notably, not the complaint) purports to outline the BSA and AML obligations of a clearing or correspondent bank, it never explains how BNY failed to comply with those obligations.  Opp. 3-4.  Furthermore, by definition, these are allegations of omissions rather than affirmative conduct, and Plaintiff never explains how they show anything beyond mere "passive facilitation."  And in any event, to the extent any Epstein-related SARs were filed by BNY, the existence of a potentially suspicious transaction does not suggest that BNY ever provided any non-routine services.  At bottom, allegations that BNY neglected to "properly intervene" to stop Epstein's alleged sex trafficking do not amount to participation.  *E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 427-428 (N.D. Tex. 2021).

---

[2] Letter from Jamie Raskin, U.S. Rep., to Robin Vince, Chief Exec. Officer, BNY, at 2 (Oct. 8, 2025), https://tinyurl.com/59dcys63; *see also* MTD 4.

*Knowledge.*  Count I should also be dismissed for failure to allege that BNY knew or should have known that "force, fraud, or coercion was used in the *particular* sex-trafficking venture that it is alleged to have participated in."  *Doe 1*, 671 F. Supp. 3d at 406.  Plaintiff does not dispute that "general awareness of sexual misconduct" does not satisfy this requirement.  *Villalobos v. Telemundo Network Grp. LLC*, 2025 WL 2687948, at *4 (S.D.N.Y. Sept. 19, 2025).  Yet the primary source of knowledge alleged is Epstein's 2006 arrest and subsequent guilty plea—which did not involve sex-trafficking charges.  MTD 12-13.  Plaintiff further argues that as of the 2008 guilty plea, "[t]he government concluded that Epstein and his co-conspirators had committed federal crimes constituting violations of the TVPA" (Opp. 13), but the non-prosecution agreement does not say that.[3]  Thus, to the extent the federal government made such a conclusion (let alone made one publicly), it is entirely unclear how BNY could or should have known about it.

Plaintiff's knowledge arguments concerning Jean-Luc Brunel and MC2 fare no better.  Plaintiff argues (based on material absent from the complaint) that "in 1988, Brunel was exposed" for "drug[ging] and sexually abus[ing] young women" (Opp. 13), but fails to explain why Brunel's conduct in 1988 would give BNY knowledge of an alleged ongoing "*particular* sex-trafficking venture" involving Plaintiff and Epstein, who did not even meet until 2011 (Compl. ¶ 46).  In addition, the only identified evidence of Brunel's supposed "exposure" is a 60 Minutes report from 1988, which Plaintiff fails to explain how or why BNY should have been aware of two decades later (and fails to describe as concerning allegations of sex trafficking rather than other sexual misconduct).  Plaintiff also alludes to "public reports indicating that Epstein and Brunel used MC2 to traffic young girls" (Opp. 11), but the cited reports are all from 2010 or later (*id.* at 7 n.11), *after*

---

[3] *See* Complaint Exhibit A, *Podhurst Orseck, P.A. v. Epstein*, No. 10-cv-21586-ASG (S.D. Fla. filed May 17, 2010), ECF No. 1-3, https://tinyurl.com/r623ye4v.

the entity that provided MC2 the line of credit was sold by BNY (MTD 8), and five years after the line of credit was issued.  Plaintiff has not provided any plausible allegations that BNY knew or should have known of any ongoing sex trafficking involving MC2 and Epstein at the time it extended the line of credit to MC2 in 2005—before Epstein's 2006 arrest and 2008 guilty plea.  Nor does the complaint contain any plausible allegations about the processed transactions to suggest that BNY knew or should have known that the funds were being used to facilitate ongoing sex trafficking involving Epstein.

***Benefit.***  Finally, the complaint lacks even a single factual allegation concerning a benefit to BNY, much less a benefit provided *in exchange for* its alleged participation in the sex-trafficking venture.  Indeed, Plaintiff's opposition merely parrots (Opp. 14) the complaint's generic assertions (copied verbatim from a complaint against a different bank) without addressing BNY's argument (MTD 14-15) that those conclusory allegations are inadequate to state a claim.  *E.g.*, *In re Watson Lab'ys, Inc.*, 101 F.4th 223, 235 (2d Cir. 2024).  Like the complaint itself, Plaintiff's opposition does not identify a single actual "connection[]" BNY made or "additional deposit[]" that BNY supposedly received in connection with Epstein's alleged sex trafficking.  *See* Opp. 14.  Although Plaintiff argues that the complaint need not allege *any* causal relationship between the alleged benefit and conduct furthering sex trafficking (*id.* at 15), courts are clear that the defendant must have "benefited *from its participation*" in the venture.  *Doe 1*, 671 F. Supp. 3d at 408 (emphasis added).  To the extent *Doe 1* suggested that the need for causation was an open question, an established consensus now recognizes that a causal relationship is necessary.  *See* MTD 15.  That causal relationship is lacking here because even if BNY processed transactions related to Epstein, it would have derived revenue from those transactions irrespective of the originating source or destination of the funds.  The same is true for the MC2 line of credit.  Thus, Plaintiff fails to

plausibly allege that BNY "would not have received" this revenue "in the absence of the alleged sex … trafficking." *Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 679 (S.D.N.Y. 2024).

## B.    The Complaint Fails To State An Obstruction Claim (Count IV)

Plaintiffs' opposition ignores that the TVPA's civil-remedy provision is limited to "actions against *the perpetrator*" or "whoever *knowingly benefits ...* from participation in a venture."  18 U.S.C. § 1595(a) (emphases added).  Thus, irrespective of whether Plaintiff could be properly characterized as a "victim" of obstruction (*see* MTD 19; Opp. 16), the statute does not permit her to bring a claim solely alleging obstruction.  For that reason alone, Count IV should be dismissed.  In any event, Plaintiff does not dispute that this claim requires plausible allegations that BNY *both* knew of *and* intentionally obstructed an ongoing government investigation into Epstein's sex trafficking.  Nor does Plaintiff dispute that the investigation principally discussed in the complaint (in Florida) concluded before the TVPA was amended to add an obstruction provision, and that those amendments do not apply retroactively.  *See* Opp. 17; MTD 19.  Thus, no matter what actions BNY allegedly took "after the 2008 TVPA amendments" (Opp. 17), it is legally impossible for BNY to have obstructed the already-completed Florida investigation.  As for the later investigation that resulted in Epstein's 2019 federal indictment, not one of the three paragraphs of the complaint that allude to this investigation alleges that BNY had knowledge of the investigation prior to the unsealing of the indictment, let alone that BNY ever took any action to intentionally obstruct the investigation.  *See* Compl. ¶¶ 37-38, 167.  Plaintiff cites an additional grab-bag of paragraphs in the opposition, but the Court can read those paragraphs for itself:  None "specifically alleges" that BNY knew about any ongoing criminal investigation, or that BNY could have "cooperate[d]" in such an investigation yet deliberately "chose not to."  Opp. 17.

### C. Plaintiff Effectively Abandons Counts II and III

Plaintiff acknowledges that *Doe 1* dismissed direct-perpetrator and aiding-and-abetting claims, and does not argue that the decision is distinguishable or wrongly decided. Opp. 18 n.15. Instead, Plaintiff asserts that these claims "should survive because the Complaint plausibly alleges at least one form of [TVPA] liability." *Id.* This argument should be rejected. Rule 12(b)(6) is an "important mechanism for weeding out meritless claims," *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014), and this basic function would be undermined if a party were allowed to proceed with discovery on theories that it does not attempt to legally justify, *see Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022) (failure to respond to argument in opposition brief deemed concession of dismissal).

## II. THE COMPLAINT DOES NOT PLEAD NEGLIGENCE

Plaintiff's negligence claims are time-barred, and do not plausibly allege that BNY owed a duty that it could have breached or that any such breach proximately caused an injury to Plaintiff.

***Statute of Limitations.*** Plaintiff does not dispute that negligence claims are subject to the three-year statute of limitations codified in N.Y. C.P.L.R. § 214(5). *See* Opp. 19-21. Instead, Plaintiff argues that BNY should be equitably estopped from invoking that statute of limitations. This argument is unavailing. For equitable estoppel to apply, the complaint would need to "plead[] and assert[] in detail" that Plaintiff "failed to commence a timely action 'due to a fraud, deception or misrepresentation perpetrated by [BNY].'" *Dowdell v. Greene County*, 788 N.Y.S.2d 439, 440-441 (App. Div. 2005). Here, there are no such allegations. Moreover, even if there were detailed allegations of deception, they would need to be distinct from the merits of the claims; equitable estoppel is not available "[w]here the same alleged wrongdoing that underlies plaintiffs' equitable estoppel argument is also the basis of their tort claims." *E.g.*, *Harbinger Cap. Partners II, LP v. Apollo Glob. Mgmt., LLC*, 230 N.Y.S.3d 68, 71 (App. Div. 2025). That is precisely what Plaintiff

seeks here, though:  Plaintiff asserts (yet again in conclusory terms) that "BNY affirmatively concealed its role … by failing to timely file required SARs, violating numerous banking laws and regulations, [and] failing to implement enhanced monitoring" (Opp. 20)—which are the exact same facts on which the negligence claims are based.  *Id.* at 21-22 (citing same facts to argue merits of negligence claims); *see, e.g.*, Compl. ¶¶ 200-203 (alleging that "BNY failed to act objectively reasonably by failing to comply with relevant banking laws and regulations").  That easily distinguishes this case from the one Plaintiff principally relies upon, *City of Almaty v. Sater*, where the allegations of "deceptive conduct" were "distinct from the actions forming the basis for the [plaintiffs'] claims."  503 F. Supp. 3d 51, 67-68 (S.D.N.Y. 2020).

Plaintiff's contention (Opp. 18) that equitable estoppel should be resolved after discovery is also incorrect.  New York courts regularly reject equitable-estoppel arguments at the pleading stage where (as here) the relevant allegations are deficient as a matter of law.  *See, e.g.*, *Putter v. N. Shore Univ. Hosp.*, 858 N.E.2d 1140, 1142-1143 (N.Y. 2006); *Harbinger Cap.*, 230 N.Y.S.3d at 71.  Plaintiff alternatively argues that BNY's conduct was "inherently self-concealing" (Opp. 20 n.16), but "New York state courts have not established such an exception" to the statute of limitations.  *Koenigsberg v. Bd. of Trs. of Columbia Univ.*, 2025 WL 1540252, at *3 (2d Cir. May 30, 2025) (summary order).  Counts V and VI should be dismissed as untimely.

***No Duty of Care.***  Cherry-picking language from this Court's opinion in *Doe 1*, Plaintiff argues that a duty exists whenever a complaint alleges that a defendant's actions "set the forces in motion" that injured the plaintiff.  Opp. 21.  *Doe 1* also explained, however, that New York law "'does not generally recognize a duty on the part of banks to non-customers,'" and that such a duty may only arise when "banks provide nonroutine services."  671 F. Supp. 3d at 414.  Plaintiff's argument that BNY provided nonroutine services fails for reasons already discussed (and to which

Plaintiff does not meaningfully respond):  Alleged "[n]oncompliance with banking laws and industry standards" (particularly when alleged in purely conclusory fashion) does not create a legal duty.  *Elmaliach v. Bank of China Ltd.*, 971 N.Y.S.2d 504, 517 (App. Div. 2013).  Similarly, offering a line of credit and processing transactions as a clearing or correspondent bank are quintessential routine services that do not give rise to a legal duty.  MTD 22-24; *supra* pp.2-3.  Indeed, that is demonstrated by the multiple cases cited in BNY's motion (MTD 22-23), which Plaintiff's opposition addresses in only the most superficial terms (Opp. 23).  For example, in *In re Terrorists Attacks*, a bank allegedly "moved money" "through correspondent accounts" on behalf of an institutional customer that allegedly "fund[ed] … terrorist acts"; these "routine banking services" were insufficient to establish a duty.  740 F. Supp. 2d 494, 518 (S.D.N.Y. 2010).

**No Proximate Cause.**  Plaintiff does not point to any factual allegations indicating that the alleged sex-trafficking venture was "a natural and foreseeable consequence of a circumstance created by" BNY.  *Doe 1*, 671 F. Supp. 3d at 415.  Plaintiff focuses on BNY's "banking relationship with MC2" (Opp. 25), again ignoring that this supposed "relationship" consisted of a single line of credit opened well before Plaintiff met Epstein or Epstein was publicly alleged to have been engaged in sex trafficking.  *Supra* pp.5-6.  Plaintiff otherwise recycles the same jumble of (unpleaded) allegations that, as explained (*supra* p.5), fails to plausibly establish that BNY should have known about Epstein's sex-trafficking venture.

## CONCLUSION

The complaint should be dismissed with prejudice.[4]

---

[4] Plaintiff's fleeting request for leave to amend should be denied, as the only "newly revealed evidence" cited is a single transaction allegedly cleared by BNY in 2007, apparently for the purchase of a helicopter.  *See* Opp. 25 n.20.  That comes nowhere near plausibly alleging knowing participation in a sex-trafficking venture or negligence.

Dated:  December 8, 2025

Respectfully submitted,

*/s/ Felicia H. Ellsworth*

Felicia H. Ellsworth (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000
felicia.ellsworth@wilmerhale.com

Boyd M. Johnson III
Christopher Bouchoux
Andres C. Salinas
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
boyd.johnson@wilmerhale.com
christopher.bouchoux@wilmerhale.com
andres.salinas@wilmerhale.com

*Attorneys for The Bank of New York Mellon*
*Corporation*

## CERTIFICATE OF COMPLIANCE

I, Felicia H. Ellsworth, hereby certify pursuant to Local Civil Rule 7.1(c) that the foregoing

memorandum of law was prepared using Microsoft Word and complies with Rule 2(e) of this

Court's Individual Rules and Local Civil Rule 7.1(c).

*/s/ Felicia H. Ellsworth*
Felicia H. Ellsworth