# EXHIBIT E

MIKE CRAPO, IDAHO, CHAIRMAN

CHUCK GRASSLEY, IOWA                RON WYDEN, OREGON
JOHN CORNYN, TEXAS                  MARIA CANTWELL, WASHINGTON
JOHN THUNE, SOUTH DAKOTA            MICHAEL F. BENNET, COLORADO
TIM SCOTT, SOUTH CAROLINA           MARK R. WARNER, VIRGINIA
BILL CASSIDY, LOUISIANA             SHELDON WHITEHOUSE, RHODE ISLAND
JAMES LANKFORD, OKLAHOMA            MAGGIE HASSAN, NEW HAMPSHIRE
STEVE DAINES, MONTANA               CATHERINE CORTEZ MASTO, NEVADA
TODD YOUNG, INDIANA                 ELIZABETH WARREN, MASSACHUSETTS
JOHN BARRASSO, WYOMING              BERNARD SANDERS, VERMONT
RON JOHNSON, WISCONSIN              TINA SMITH, MINNESOTA
THOM TILLIS, NORTH CAROLINA         BEN RAY LUJÁN, NEW MEXICO
MARSHA BLACKBURN, TENNESSEE         RAPHAEL G. WARNOCK, GEORGIA
ROGER MARSHALL, KANSAS              PETER WELCH, VERMONT

GREGG RICHARD, STAFF DIRECTOR
JOSHUA SHEINKMAN, DEMOCRATIC STAFF DIRECTOR



**United States Senate**

COMMITTEE ON FINANCE

WASHINGTON, DC 20510–6200

January 15, 2026

Robin Vince
Chief Executive Officer
BNY Mellon
240 Greenwich Street
New York, NY 10286

Dear Mr. Vince,

I write seeking information related to former BNY Mellon ("BNY") client Jeffrey Epstein. As you are aware, I have been investigating matters related to the financing of Epstein's sex trafficking operation for over three years. This investigation has uncovered numerous potential compliance failures at several Wall Street banks which enabled Epstein's criminal activities.

As part of this investigation, Democratic and Republican staff of the Senate Finance Committee conducted an in-camera review of thousands of pages of Treasury Department files documenting the flow of money through Jeffrey Epstein's accounts. These documents included a 2019 filing by BNY that flagged 270 suspicious wire transfers totaling $378 million in and out Epstein's accounts at BNY. [1] These wire transfers were authorized by Epstein or parties directly associated with his accounts at BNY and did not have a clearly verifiable business purpose.

The documents reviewed by Finance Committee investigators also found that BNY reported these transactions to the U.S. government only after Epstein was arrested on federal sex trafficking charges. This raises serious concerns that BNY may have violated federal anti-money laundering laws that require financial institutions to conduct due diligence on customer relationships and report suspicious activity to the U.S. government in a timely fashion.

Recent court filings also identified that BNY processed and assisted in the transfer of at least $20 million in 2007 (all in round $1 million dollar amounts multiple times a month) to Epstein's accounts at JPMorgan Chase ("JPMC").

---

[1] This in camera review by Senate Finance Committee staff was conducted at a Treasury Department reading room on February 14, 2024, and included staff from both the Majority and the Minority of the Committee.

These transactions all occurred within a short period of time and had patterns indicative of potential money laundering.[2] The Treasury Department and other financial regulators have regularly put out guidance to banks that large "round dollar" transactions, repetitive transactions and circuitous money movements are highly suspicious. [3] These transfers, included, but are not limited to the following amounts:

**Table 1: Transfers from Epstein's BNY accounts to Epstein's JPMC accounts**

| Date | Amount |
| --- | --- |
| January 11, 2007 | $1,000,000 |
| January 22, 2007 | $1,000,000 |
| January 29, 2007 | $1,000,000 |
| February 22, 2007 | $1,000,000 |
| February 27, 2007 | $1,000,000 |
| May 9, 2007 | $1,000,000 |
| May 21, 2007 | $1,000,000 |
| June 1, 2007 | $1,000,000 |
| June 6, 2007 | $1,000,000 |
| June 13, 2007 | $1,000,000 |
| June 27, 2007 | $1,000,000 |
| August 3, 2007 | $1,000,000 |
| August 14, 2007 | $1,000,000 |
| August 21, 2007 | $1,000,000 |
| August 23, 2007 | $1,000,000 |
| September 11, 2007 | $1,000,000 |
| September 19, 2007 | $1,000,000 |
| September 26, 2007 | $1,000,000 |

Additionally, a recently unsealed report by a forensic accountant identified suspicious financial activity from accounts at BNY owned or controlled by Epstein and key co-conspirators in his sex trafficking operation, including Ghislaine Maxwell. For example, on June 15, 2007, Epstein wired $7.4 million from one of his accounts at BNY to Maxwell's accounts at JPMC.[4] On the same day, Maxwell transferred those same funds to an account opened under the name Air Ghislaine, Inc. at JPMC.[5] Then on June 18, 2007, $7.3 million was transferred by Maxwell to Sikorsky Aircraft as a down payment for the purchase of a green helicopter – Sikorsky S76C.[6]

---

[2] A summary of Epstein's transactions for 2007, attached to JPMC internal emails, discusses transfers made via BNY related to Epstein and Financial Trust Company. See *U.S. Virgin Islands v. JPMorgan Chase Bank N.A.,* Case No. 22-cv-10904-JSR (S.D.N.Y.), ECF No. 238-38

[3] https://www.fincen.gov/system/files/shared/LLCAssessment_FINAL.pdf; https://www.finra.org/rules-guidance/notices/19-18

[4] June 16, 2023 expert report of forensic accountant Jorge Amador, citing sealed document JPM-SDNYLIT-00085024

[5] *Id.*

[6] *Id.*, citing sealed document JPM-SDNYLIT-00008788

Under the Bank Secrecy Act (BSA), banks are required to file SARs when they "detect a known or suspected violation of Federal law or a suspicious transaction related to a money laundering activity or a violation of the Bank Secrecy Act."[7] Specifically, a bank must file a SAR if it knows, suspects, or has reason to suspect that a transaction "has no business or apparent lawful purpose or is not the sort in which the particular customer would normally be expected to engage, and the institution knows of no reasonable explanation for the transaction after examining the available facts, including the background and possible purpose of the transaction."[8]

A bank must file a SAR within 30 days after the date of initial detection of facts that may constitute a basis for filing a suspicious activity report.[9] According to FinCEN, in no case shall reporting be delayed more than 60 calendar days after the date of initial detection of a reportable transaction. Additionally, the BSA's customer due diligence rule requires financial institutions to maintain policies and procedures in place to "understand the nature and purpose of customer relationships" and "conduct ongoing monitoring to identify and report suspicious transactions."[10]

Unfortunately, much remains unknown about the extent to which BNY executives may have turned a blind eye to Epstein's conduct. Epstein was moving enormous sums of money around the globe to traffic women and girls, and BNY was well positioned to blow the whistle.

BNY's failure to contemporaneously report Epstein's suspicious activity to federal law enforcement may have enabled Jeffrey Epstein's horrific crimes and allowed the abuse of women and girls to continue for years. BNY may also have broken the law by waiting years to report Epstein's suspicious transactions to U.S. regulators. Suspicious activity reports are designed to alert federal law enforcement to potential criminal activity and assist with investigation, and for banks to withhold these reports until a suspect like Jeffrey Epstein is already behind bars is an impediment to our criminal justice system.

Congress is currently pursuing a number of legislative options to secure transparency and accountability for Epstein's actions and those who enabled him. In order to help Congress better understand BNY's handling of Jeffrey Epstein's accounts, please provide answers to the following questions no later than February 6, 2026:

1. Please provide copies of all suspicious activity reports (SARs) filed by BNY with the U.S. Treasury Department related to the following individuals and entities: Jeffrey Epstein, Ghislaine Maxwell, Darren Indyke, Richard Kahn, Harry Beller. (Air Ghislaine).

2. For each suspicious wire transfer to and from Epstein's accounts at BNY reported to the U.S. Treasury Department in 2019, please provide the following information: The date of each transaction, the dollar amount involved, the sender/recipient of the funds, and the documented purpose for each transaction, and the correspondent bank account used (if applicable).

---

[7] https://www.ecfr.gov/current/title-12/chapter-I/part-21/subpart-B
[8] 21.11(c)(4)(iii)
[9] https://www.occ.treas.gov/publications-and-resources/forms/sar-program/index-sar-program.html
[10] https://www.fincen.gov/resources/statutes-and-regulations/cdd-final-rule

3.  Prior to Epstein's arrest in July of 2019 on federal sex trafficking charges, did BNY Mellon file any SARs with the Treasury Department for activity from accounts related to Jeffrey Epstein? If yes, please provide the number of SARs filed, the date each SAR was filed, and the dollar value of the transaction activity being reported for each SAR.

4.  Please provide a list of signatories of accounts owned or controlled by Jeffrey Epstein while Epstein was a BNY client. Please note each specific account in which the following individuals had signatory authority: Darren Indyke, Harry Beller, Richard Kahn.

5.  Please provide copies of all know your customer ("KYC") and customer due diligence ("CDD") profiles prepared by BNY Mellon for Jeffrey Epstein between 2003 and 2019.

6.  Please provide the name of the relationship managers at BNY responsible for Epstein's accounts as well as their direct supervisors while Epstein was a client of BNY.

7.  Why did Jeffrey Epstein make at least 18 round dollar wire transfers in $1 million installments in 2007 from his accounts at BNY? Did BNY Mellon employees inquire about the purpose of these transactions or conduct any enhanced due diligence? If yes, what was the result of this review and were these transactions reported to the U.S. Treasury Department in a timely manner?

8.  Has there ever been an internal investigation by BNY into BNY executives for their management of Jeffrey Epstein's accounts at BNY? If yes, please provide the results of that investigation.

9.  Please provide a list of all cash withdrawals in excess of $10,000 made from Epstein's accounts at BNY between 2001 and 2019, including the stated purpose of each of these transactions.

Thank you for your attention to this important matter. Should you have any questions please don't hesitate to contact me or Patricio Gonzalez from my staff.

Sincerely,

Ron Wyden
United States Senator
Ranking Member, Committee
on Finance